IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY COFFMAN,                )
                             )
       Plaintiff,         )
                             )
v.                           )    Case No. 10-2668-CM
                             )
                             )
MICHAEL J. ASTRUE,           )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
                             )
       Defendant.         )
_____)

**MEMORANDUM AND ORDER**

Plaintiff filed this action pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, requesting the court to review the decision of the Administrative Law Judge ("ALJ") dated September 24, 2009, finding that plaintiff was not entitled to disability benefits. Plaintiff contends that the ALJ erred in her findings at Steps Two, Three, and Five of the five-step sequential evaluation process and in its Residual Functional Capacity ("RFC") assessment. Plaintiff further contends that the ALJ committed multiple errors in general, failing to base her decision on substantial evidence in the record. The court makes the following findings.

**I.     Procedural Background**

Plaintiff originally filed an application with the Social Security Administration for disability benefits in February 2007, alleging disability as of October 24, 2006. After plaintiff's application and request for reconsideration were both denied, plaintiff requested, and was granted, an administrative hearing. The ALJ, Linda Sybrant, issued her opinion on September 24, 2009, denying plaintiff's application. Plaintiff requested review on appeal; and on November 4, 2010, the

Appeals Council denied plaintiff's request. Therefore, the decision of the Appeals Council serves as the final decision of the Commissioner. Plaintiff's request for this court's review is proper and timely.

## II.     Legal Standard

This court reviews "'the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). "'Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). The court "'may not reweigh the evidence or substitute its judgment for that of the agency.'" *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (quoting *Kelly v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). Further, this court must examine the entire record, which includes any evidence which may detract "from the weight of the Commissioner's decision," and must "'determine if the substantiality of the evidence test has been met.'" *Jarmillo v. Massanari*, 21 F. App'x 792, 795 (10th Cir. 2001) (quoting *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

It is plaintiff's burden to prove "a disability within the meaning of the Social Security Act." *Hunter*, 321 F. App'x at 792 (quotation omitted). A disability "'requires both an inability to engage in any substantial gainful activity' and 'a physical or mental impairment, which provides reason for the inability.'" *Id*. (quoting *Barnhart v. Walton*, 535 U.S. 212, 217 (2002)). Impairment, as defined under 42 U.S.C. § 423 (d)(1)(A), is a "medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

It is the responsibility of the ALJ to thoroughly conduct a five-step sequential process when reviewing claims for disability under the Social Security Act. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citing *Bowen v. Yuckert*, 482 U.S. 137 (1987)). If a determination is made at any of the steps regarding plaintiff's disability status, then further evaluation under subsequent steps is not necessary. *Id*.

At step one, plaintiff must demonstrate that he is not engaged in substantial gainful employment activity. *Id*. If plaintiff makes a showing at step one that he is not substantially gainfully employed, then the ALJ moves to step two, which requires plaintiff to demonstrate that he has a "medically severe impairment or combination of impairments" that severely limit his ability to do work. *Id*. (quotation omitted). The ALJ can make a nondisability determination if there is no more than a minimal effect on plaintiff's ability to do work as a result of his impairments. However, if there is a sufficient showing that plaintiff's impairments are more than minimal, the ALJ moves to step three of the evaluation. At step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id*. If the impairment(s) can be found on the list, then the ALJ makes a disability finding; if an impairment is not listed, the ALJ moves to step four of the evaluation. *Id*.

Prior to step four, the ALJ conducts an RFC assessment. *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). At step four, it is plaintiff's burden to show that he cannot perform his past work. *Williams*, 844 F.2d at 750. The

burden shifts to the ALJ at step five, where the ALJ must show that plaintiff can perform some work which exists in large numbers in the national economy. *Id*.

**III.     Analysis**

**A.      The Administrative Decision**

The ALJ conducted a hearing where she asked questions of plaintiff and a vocational expert. The ALJ then issued her decision, determining that plaintiff had not engaged in any substantial gainful activity since the alleged onset disability date of October 24, 2006. (R. at 15.) Based on evidence in the record, the ALJ found plaintiff to suffer from the following severe combination of impairments: "major depressive disorder, mild; generalized anxiety disorder; osteoarthritis of the shoulders, mild; obesity; and history of alcohol abuse." (*Id*.) The ALJ determined that plaintiff's severe impairments did not meet or equal medical criteria in the listing of impairments.

The ALJ conducted an RFC assessment, finding that plaintiff was capable of light semi-skilled work where plaintiff would not be in a supervisory or managerial position. (*Id*. at 19–20.) The ALJ further determined that plaintiff could not return to his past relevant work. She determined, however, that plaintiff had transferable skills enabling him to do other light work as a file clerk, sedentary work of a production or control clerk, and as a production scheduler. (*Id*.) The ALJ found that plaintiff was not disabled under the Social Security Act during any time through September 24, 2009, the date of the ALJ's decision. (*Id*. at 21.)

**B.      Plaintiff's Claims**

Plaintiff argues that the ALJ erred in her decision by: (1) failing to address "multiple" other medically determinable impairments as "severe" or "non-severe" at step two; (2) failing to provide evidence to support her finding at step three; (3) committing multiple errors in the RFC assessment;

(4) committing multiple factual and legal errors, failing to base her decision on substantial evidence in the record; and (5) committing reversible error at step five of the sequential evaluation process.

        1.        <u>Error at Step Two: Failure to Properly Determine Plaintiff's Severe Impairments</u>

Plaintiff claims that the ALJ failed to find plaintiff's lower back pain with radiation and arthritis in his hands to be medically determinable impairments, either severe or non-severe. He also argues that the ALJ trivialized plaintiff's osteoarthritis in his shoulders because it is a more severe impairment than the ALJ determined.

        a.        *Legal Standards*

An error at step two of the evaluation process can be harmless as long as some severe impairment or combination of impairments is found and the ALJ proceeds to step three. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). However, an error at step two may not be harmless if it affects the ALJ's findings at steps four and five, when the ALJ must: (1) consider "both severe and non-severe medically determinable impairments," and (2) pose any hypothetical questions to the VE "reflect[ing] with precision all–and only–the impairments and limitations borne out by the evidentiary record." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)).

This court's duty is not to usurp the role of the ALJ, even if the court disagrees with the decision, but rather to determine whether substantial evidence supports the ALJ's findings. *Kelly*, F.3d at 337. A physical or mental impairment must be established by medical evidence "consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statements." 20 C.F.R. §§ 404.1508, 1509. It also must have lasted or is expected to last for a "continuous period of at least 12 months." *Id*. The court gives considerable deference to the ALJ's credibility determinations,

*Stephens v. United States Dep't of Health & Human Servs.*, No. 93-5145, 1993 WL 498168, at *1 (10th Cir. Dec. 2, 1993) (citation omitted), as long as the ALJ's credibility determination is linked to substantial evidence in the record, and "not just a conclusion in the guise of findings," *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998).

      b.     *Back Pain*

Plaintiff contends that the ALJ failed to properly consider evidence supporting plaintiff's back pain as part of the combination of severe impairments. Plaintiff argues that the ALJ's finding that plaintiff had some form of "mild foraminal stenosis" is not supported by the bulk of evidence. (Doc. 4, at 12.) He notes that the ALJ cannot pick and choose only the evidence to support a finding that plaintiff's back pain was abated with a steroidal injection. Plaintiff believes evidence supports a severe back condition which limits his ability to stand, sit, and lift during work activities. He also contends that he continues to suffer from back and leg pain after multiple steroidal injections.

The ALJ did not find credible plaintiff's complaints of back pain. The ALJ discussed the limited evidence regarding plaintiff's back pain, noting that although there is evidence of "mild foraminal stenosis at L3-4 and L5-S1" in March 2008, the pain was improved by 80% after a steroid injection. *Id*. The ALJ stated that "there is no further evidence of treatment for any back problems" after the steroid injection in March 2008. *Id*.

Plaintiff's complaints of back pain began in early March, 2008, after plaintiff's treating physician sent him for an MRI of the lumbar spine on March 26, 2008. The doctor administering the MRI indicated plaintiff to have "[r]ight foraminal to lateral disc protrusion, small to moderate size at the L3-4 level, which is broad based" complicating a "mild right neural foraminal stenosis," a "[b]road based disc protrusion, moderate in size at the L5-S1 level, which is slightly asymmetric to

-6-

the right" with a "mass effect to the right lateral recess," and "mild bilateral neural foraminal stenosis, right greater than left." (*Id*. at 384.) Plaintiff had two steroidal treatments, on April 2 and 16 respectively. (*Id*. at 517–18, 569.) Plaintiff reported the duration of the intervals of his leg numbness to be reduced, and therefore, Dr. Waitley, plaintiff's pain management referral physician, reported plaintiff was "probably 80% better in his pain." (*Id*. at 569.) Dr. Waitley recommended that plaintiff repeat the injection, but the record is unclear as to whether plaintiff followed up for a third visit after the April 16 injection. Although the medical evidence in the record establishes some condition existed regarding plaintiff's back, there is limited evidence after the injections in April, 2008 that plaintiff's back pain was so severe to qualify for a medically determinable impairment under the regulations.

    c.  *Osteoarthritis in Plaintiff's Shoulders*

Plaintiff contends that the osteoarthritis in his shoulders is so severe that it has a limiting effect on his "ability to do basic work activities" such as "pushing, pulling, lifting, and carrying." (Doc. 4, at 15.) Plaintiff argues that had the ALJ included these limitations in the RFC determination and posed them in the hypothetical to the Vocational Expert ("VE"), the potential jobs of file clerk, production scheduler or production clerk would have been eliminated from the ALJ's decision.

Here, the ALJ found plaintiff to have a combination of severe impairments, including osteoarthritis of the shoulders, mild. (R. at 15.) Therefore, there was no error committed at step two regarding a finding of osteoarthritis in plaintiff's shoulders.

    d.  *Osteoarthritis in Plaintiff's Hands*

Plaintiff further argues that evidence supports an impairment of arthritis in his hands.

Plaintiff contends that this impairment has "result[ed] in a loss of dexterity and sensation." (Doc. 4, at 15.)

The ALJ did not consider plaintiff's complaints of pain credible due to a lack of evidence of carpel tunnel or "any upper neuropathic disorder" in his hands. (R. at 17.) There is limited evidence in the record regarding a diagnosis of arthritis in plaintiff's hands. Plaintiff first complained of feeling numbness and tingling in his hands and fingertips in July, 2005, and was referred to a neurologist, Dr. Paul Morte, for testing. (R. at 528–531, 595.) In 2005 and 2008, Dr. Morte determined that there was a lack of evidence of carpal tunnel syndrome or peripheral neuropathy. (*Id.*) In 2009, Dr. Morte determined that the strength in plaintiff's upper extremities was normal. (*Id.* at 595.) Although Dr. Morte expressed that plaintiff's symptoms "sound[ed] more like [a] musculoskeletal/joint problem," Dr. Morte did not diagnose plaintiff with arthritis in his hands. (*Id.* at 528.)

A treatment note in the record made by Dr. Christopher Penn, plaintiff's treating physician, on January 19, 2009 includes a notation that plaintiff was seen by Dr. Mehta regarding plaintiff's hand pain. (*Id.* at 605–606.) The note indicates plaintiff received a diagnosis of "arthritic etiology of the pain," after complaining about having difficulty opening small packages of crackers, as well as holding the telephone. *Id.* There is evidence in the record to suggest that plaintiff was able to fish, cut the grass, clean and cook. (*Id.* at 588–89, 594.) Although evidence in the record demonstrates that plaintiff used to fish and hunt more, the reason he gives for not participating in these activities as much anymore is due to his being "fearful of seeing someone who will think badly of him because he is experiencing depression." (*Id.* at 333.) There is limited evidence that plaintiff's hand condition was severe enough to limit work activities, or was expected to last for a period of twelve

(12) continuous months.

The ALJ found that plaintiff's osteoarthritis in his shoulders was a severe impairment in combination with plaintiff's other impairments. And, after the court's thorough review of the administrative record, evidence does not support plaintiff's assertions that arthritis in his hands and his back condition meet the definition of an impairment under 20 C.F.R. §§ 404.1508, 1509. Therefore, the court finds that substantial evidence supports the ALJ's findings at step two.

2. Error at Step Three: Failure to Determine that Plaintiff Had a Listed Impairment

Plaintiff contends that the ALJ erred at step three of the evaluation when she failed to explain with any detail why plaintiff's impairments did not meet or equal one of the listed impairments. Plaintiff argues that this case is similar to *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996), where the Tenth Circuit found the ALJ committed error for failing to set forth specific findings at step three, including the reasons for accepting or rejecting evidence. Plaintiff argues that there was no discussion on the part of the ALJ regarding any of the medical evidence, nor which listings were considered by the ALJ in reaching the decision at step three.

In *Fischer-Ross v. Barnhart*, the Tenth Circuit reversed the district court's decision based on *Clifton*. 431 F.3d 729, 733 (10th Cir. 2005). The Tenth Circuit disagreed with the district court's decision to remand the matter for further findings at step three, despite finding at steps four and five that the ALJ's decision was supported by substantial evidence. *Id*. The *Fischer-Ross* court determined that "*Clifton* did not categorically reject the application of harmless error analysis," and that a finding of harmless error is appropriate when "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id*. at 733–34. The ALJ's findings in *Clifton* were scant, unlike the ALJ's findings in *Fischer-Ross*, which

-9-

were detailed and substantial. *Id*. The *Fischer-Ross* court determined that there was substantial evidence to support the ALJ's findings at steps four and five, unlike the *Clifton* court, who could not make that determination based on the ALJ's limited RFC findings after its step three evaluation.

The court agrees that the ALJ failed to discuss with any specificity her findings at step three. Despite the ALJ's limited discussion of the evidence at step three, the error here is harmless. A reasonable factfinder reviewing the evidence in the record could not have found that plaintiff's combination of impairments met or equaled a medical listing under 20 C.F.R. Pt. 404, Subpt. P.

      3.      <u>Multiple Errors in Assessing Plaintiff's RFC</u>

Prior to step four of the evaluation process, the ALJ must determine plaintiff's RFC, which is used to "determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200(a). Pursuant to 20 C.F.R. § 404.1545(e), the ALJ is required to consider all medically determinable impairments, whether severe or non-severe, when making an RFC assessment, and to "consider a claimant's abilities to meet the demands of work despite [his] impairment(s)." *Luzier v. Astrue*, No. 10-1186-JWL, 2011 WL 2470243, at *4 (D. Kan. June 20, 2011) (citing 20 C.F.R. § 404.1545). The ALJ is to consider physical abilities such as "sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments." *Henderson-Harrison v. Astrue*, No. 10-1218-JWL, 2011 WL 146485, at *4 (D. Kan. Apr. 18, 2011) (citing 20 C.F.R. §§ 404.1545(b, c, d), 404.1521). Pursuant to SSR 96-8p, when completing the RFC assessment, the ALJ must cite to medical and nonmedical evidence, discuss plaintiff's credibility regarding symptoms, resolve ambiguities between the evidence and plaintiff's

-10-

claims of pain, and discuss medical source opinions from treating or agency physicians and the weight given to each source. *Luzier*, 2011 WL 2470243, at *4.

Plaintiff claims that the ALJ made multiple errors in determining plaintiff's RFC: (1) failure to assess the RFC on a function-by-function basis; (2) failure to itemize the functions of the RFC separate and apart from the Psychiatric Review Technique Form ("PRTF"); (3) failure to include all of plaintiff's non-exertional impairments in the RFC; and (4) failure to link the RFC with specific evidence in the record. The court will address each below.

    a.    *Failure to Assess the RFC Function-by-Function, and to Link It to Evidence in the Record*

The court will first address plaintiff's claims that the ALJ erred by failing to make RFC findings on a function-by-function basis, and failing to link the RFC determination with evidence in the record. Prior to the ALJ's RFC finding, the ALJ discussed medical evidence in the record, including clinical records from Nancy Bonner with the Bert Nash Community Mental Health Center, Dr. Elias Chediak, Dr. Stanley Mintz, and Dr. Christopher Penn. (R. at 15–19.) The ALJ also discussed medical source opinions and what weight was given to each opinion, plaintiff's credibility regarding complaints of pain, and ambiguities between plaintiff's complaints of pain and the medical evidence in the record. (*Id*.) The ALJ then made the following RFC determination:

> The undersigned notes claimant's residual functional capacity has been determined based on the testimony of claimant, third party statements, and the medical records. In other words, the undersigned has considered the record as a whole and the residual functional capacity, outlined below, considered everything, rather than merely adopted the opinion of a treating physician's residual functional capacity in total. Accordingly, on review of all of the credible evidence of record summarized above, the undersigned finds claimant retains the following residual functional capacity: He can do light, semi-skilled work (SVP3-4) that does not require supervising or managing as a part of his job duties.

The ALJ stated several times during her discussion of the evidence that she believed it would

-11-

be difficult for plaintiff to return to his job at KMart, but that plaintiff had never attempted to find a job with less demanding duties. (R. at 17–18.) However, the ALJ failed to discuss how plaintiff's impairments would affect plaintiff's ability to perform sustained work activities in a different job setting, and how any restrictions caused by plaintiff's impairments are compared with the functional demands regarding an RFC finding of light, semi-skilled work. *Diggdon v. Apfel*, No. 98-5207, 1999 WL 617702, at *2–3 (10th Cir. Aug. 16, 1999). Specifically, the ALJ failed to discuss plaintiff's impairments and how they relate to physical limitations, such as "reaching, pushing [and] pulling," or mental limitations such as "understanding, remembering, carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures" pursuant to 20 C.F.R. §§ 404.1545(b, c, d), 404.1521.

Evidence in the record shows that plaintiff's severe impairments could have caused some limitations in his ability to work. There is evidence that plaintiff suffers from some mobility limitations regarding plaintiff's ability to reach due to osteoarthritis in his shoulder. (R. at 605–06.) Further, there is evidence in Dr. Mintz's medical records that plaintiff had moderate limitations from his ability to carry out detailed instructions and ability to interact appropriately with the general public, and along with some periods of forgetfulness. (*Id.* at 278, 282, 405.) The ALJ does not discuss these possible limitations in her decision, despite the significant weight given to Dr. Mintz's opinion, which included a finding that "claimant would have difficulty relating well to co-workers and supervisors due to symptoms of depression." (*Id.* at 16.)

The ALJ's omissions were neither "hypertechnical," nor harmless, as the Commissioner suggests. This court cannot meaningfully review whether substantial evidence in the record actually supports an RFC assessment unless the ALJ links the RFC assessment to the evidence in the record. *See Kency v. Comm'r of Soc. Sec.*, No. 03-1190-MLB, 2004 WL 5542829, at *4 (D. Kan. Nov. 19,

2004) (finding when the ALJ summarizes facts, notes a consideration of the facts and announces a decision, this does not allow the court a meaningful opportunity to review whether the ALJ properly analyzed the evidence). Therefore, this court will remand the matter for further explanation by the ALJ regarding "the evidentiary basis of and rationale for the RFC assessed." *Luzier v. Astrue*, No. 10-1186-JWL, 2011 WL 2470243, at *7 (10th Cir. June 20, 2011).

        b.     *Failure to itemize the RFC functions apart from the Psychiatric Review Technique Form ("PRTF")*

"[T]he PRTF form is used to determine the severity of a mental impairment at steps [two] and [three] of the sequential evaluation process, while a mental RFC assessment form is used to determine a claimant's RFC at steps [four] and [five]." *Moore v. Astrue*, No. 10-1242-SAC, 2011 WL 1885940, at *4 (D. Kan. May 18, 2011); *Birnell v. Apfel*, 45 F. Supp. 2d 826, 839 (D. Kan. 1999). In assessing plaintiff's mental RFC, an ALJ is required to make "a more detailed assessment" at steps four and five. *Id*. The ALJ shall "itemiz[e] various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." *Id*.; *Coleman v. Astrue*, No. 09-1338-SAC, 2010 WL 4942103, at *7 (D. Kan. Nov. 30, 2010).

    After her step three determination, the ALJ made the following statement:

    Pursuant to regulatory requirements, the undersigned has rated claimant's mental functional limitations as follows: no limitation in activities of daily living; mild to moderate difficulties maintaining concentration, persistence, or pace such that he is limited to the performance of semi-skilled work; and no periods of decompensation of extended duration.

(R. at 15.) The ALJ then discussed medical evidence in the record, before making the RFC determination that plaintiff could perform light, semi-skilled work with no supervision or managing requirements. (*Id*. at 15–19.)

-13-

The ALJ, however, did not conduct a "more detailed assessment" while making the mental RFC determination, failing to itemize various functions contained in paragraphs B and C in the adult mental disorders listing under 12.00. *Birnell*, 45 F. Supp. 2d at 839. On remand, the ALJ shall properly assess plaintiff's RFC, to include a more detailed mental RFC analysis.

        c.      *Failure to Include All of Plaintiff's Non-Exertional Impairments in the RFC Assessment*

Plaintiff argues that the ALJ failed to include evidence of plaintiff's low GAF score of 50, low average intelligence, difficulty relating to co-workers, plaintiff's advanced age, and arthritis in his hands as non-exertional impairments in the RFC assessment, all of which, plaintiff asserts, are required under SSR 96-8p.

Because this court is remanding the matter, the court will not address each argument plaintiff makes here. However, the court is concerned with the ALJ's discussion of limitations, both exertional and non-exertional. The court is uncertain what additional limitations, aside from those mental non-exertional limitations taken from the PRTF, the ALJ included in her RFC assessment. As the court discussed above, the ALJ failed to discuss any possible exertional limitations that may have affected plaintiff's ability to do work based on evidence in the record regarding plaintiff's osteoarthritis in his shoulders. The ALJ should also keep in mind that plaintiff has advanced in age since the decision was issued, which may place plaintiff into a different age category.

        4.      <u>Failure to Base Decision on Substantial Evidence in the Record</u>

Plaintiff believes the ALJ committed "multiple factual and legal errors" in the unfavorable decision. (Doc. 4, at 26.) These errors include: (1) an inaccurate interpretation of plaintiff's GAF score of 50; (2) an application of the PRTF which is unsubstantiated by, and conflicts with, evidence in the record; and (3) an inaccurate interpretation of back treatment improvement, side effects from

-14-

medication, and over-the-counter treatment for plaintiff's impairments.

        a.    *GAF Scores*

"The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence." *Muntzert v. Astrue*, No. 09-2447-JWL, 2010 WL 3724858, at *5 (D. Kan. Sept. 17, 2010). The ALJ is required not only to discuss evidence chosen to rely upon, but also uncontroverted evidence not relied upon, in addition to any "significantly probative evidence" rejected. *Id.* (citing *Clifton*, 79 F.3d at 1009–10). The ALJ discussed the occasions when plaintiff's GAF score was assessed by various physicians and medical professionals (Nancy Bonner, Dr. Mintz and Dr. Chediak), including GAF scores ranging from 45 and 50 in 2007, to 53 through 62 in 2009-10. (R. at 15–16.) Additionally, the ALJ gave determinations of weight that she assigned to each physician's medical opinions, which included the GAF assessments. (*Id.*) Plaintiff has failed to demonstrate that the ALJ failed to adequately discuss, or erred in her consideration of, plaintiff's GAF scores and how these affected plaintiff's ability to do work.

        b.    *PRTF Application*

The ALJ is no longer required to fill out a PRTF as long as the ALJ discusses the elements of the PRTF in his decision. *Moses v. Barnhart*, 321 F. Supp. 2d 1224, 1232 (D. Kan. 2004). However, Dr. Charles Fantz completed a PRTF form on March 30, 2007, which covers the time period from October 24, 2006 through October 24, 2007. (R. at 235–248.) Dr. Fantz determined plaintiff to suffer from affective disorders and anxiety-related disorders under listings 12.04 and 12.06 respectively, and that the impairments are severe but not expected to last twelve months. (*Id.* at 235.) Dr. Fantz also found major depressive disorder as a medically determinable impairment, which did not meet a specific listing. (*Id.* at 238.) Under the "paragraph B" Criteria of Listings, Dr. Fantz determined plaintiff to have mild restriction of activities of daily living, mild difficulties in

-15-

maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (*Id*. at 245.) Dr. Fantz further found that evidence of plaintiff's impairments under listings 12.04 and 12.06 did not establish the presence of "paragraph C" criteria. Dr. Fantz found plaintiff to be credible, and that if plaintiff were to continue to comply with a medication and treatment schedule, plaintiff would continue to improve and possibly return to a "prior level of functioning." (*Id*. at 247.)

Dr. Carol Adams also completed a PRTF form on September 12, 2007, covering the time period from October 24, 2006 through September 12, 2007. (*Id*. at 286–298.) Dr. Adams marked impairments under 12.04, 12.06, and 12.09, affective disorders, anxiety-related disorders and substance addiction disorders respectively. (*Id*. at 286.) Dr. Adams found plaintiff to have mild depressive disorder, generalized anxiety disorder and alcohol abuse in remission—medically determinable impairments that do not satisfy the diagnostic criteria in the listings. (*Id*. at 289, 291, 294.) Dr. Adams determined plaintiff to have a mild restriction of daily activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (*Id*. at 296–97.) She also determined that evidence did not establish the presence of paragraph C criteria. (*Id*.)

The ALJ did not, however, discuss the opinions of Dr. Fantz or Dr. Adams in the decision, or what weight, if any, he gave to these opinions. As noted above, the ALJ discussed the PRTF in her decision, which differed from the PRTF forms. The ALJ did not discuss what evidence she did rely upon when making her PRTF assessment. On remand, the ALJ is instructed to properly discuss the criteria in the PRTF and what evidence supports this finding.

        c.        *Plaintiff's Complaints of Pain*

When supported by substantial evidence in the record, the court will rarely disturb the ALJ's

findings regarding plaintiff's complaints of pain. *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). The ALJ discussed the evidence in the record and plaintiff's complaints of pain in her decision, and then made specific credibility determinations based on "discrepancies between [plaintiff's] assertions and information contained in the documentary reports about his fishing and physical limitations, the reports of treating and examining practitioners, and the need for only mild or over-the-counter medication to control his symptoms." (R. at 18.) The court will not usurp the ALJ's role in determining the credibility of plaintiff, and finds the ALJ's credibility determination is supported by substantial evidence in the record.

        5.       <u>Error at Step Five: Failure to Elicit Substantiated Vocational Expert Testimony</u>

Plaintiff believes that the ALJ made an improper determination at step five of the evaluation process, where she found that plaintiff had transferable skills that could be applied to other jobs in the national economy. Plaintiff contends that the ALJ failed to elicit testimony from the VE regarding which specific skills, if any, were transferable and how those skills were transferable to the identified jobs.

The burden shifts to the Commissioner at step five of the evaluation process to demonstrate "there are sufficient jobs in the national economy for a hypothetical person with [plaintiff's] impairments." *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005). The Commissioner must consider plaintiff's "age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). When the ALJ presents the hypothetical to the vocational expert to determine whether other jobs exist in the national economy that plaintiff can perform, the ALJ must identify only the mental and physical impairments that are based on evidence in the record. *Talamantes v. Astrue*, 370 F. App'x 955, 959 (10th Cir. 2010) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)).

-17-

"The Commissioner must overcome a higher burden at step five to deny benefits to claimants of advanced age." *Jensen*, 436 F.3d at 1165 (citing *Emory v. Sullivan*, 936 F.2d 1092, 1094 (10th Cir. 1991)). Pursuant to 20 C.F.R. § 404.1568(d)(4), if a determination is made that a person is of an advanced age (age 55 or older) with "severe impairment(s) that limits [plaintiff] to sedentary or light work," the Commissioner "cannot make an adjustment to other work unless [plaintiff] has skills that [plaintiff] can transfer to other skilled or semiskilled work." *Id*. (quotation omitted). "[I]t is not enough that persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semi-skilled work." *Id*. (quoting *Emory*, 936 F.2d at 1094).

At the evidentiary hearing, the ALJ questioned plaintiff regarding his job as a department manager for Kmart, and the physical requirements of the job, such as how long plaintiff was on his feet. (R. at 26, 31–32.) Plaintiff also indicated that he was in some type of management three-fourths of his 36-year career. (*Id*. at 26.) The ALJ then posed the following hypothetical to the VE at the hearing:

> Q All right. If you assume an individual of the claimant's age, education and work history, you assume a limitation to light exertional work, obviously, if it's just straight light exertional work, then the past work's available, right?
> A. Correct.
> Q. If you consider a light job that does not have the skill level, let's say a skill level of three or four, any transferable skills?
> A. Certainly. File clerk would be appropriate, it's an SVP of three and light; production control scheduler, it's an SVP of four and sedentary; and a production –
> Q. Production control clerk, is that what you said?
> A. Correct.
> ...
> Q. And just as a vocational expert, if you're looking at skill levels and you compare an SVP three to four versus an SVP of eight, would you consider the jobs that you've mentioned less stressful?
> A. Much less stressful. The manager has to make sure everything happens. This is a, would be a worker under a manger, doing any of the production

> clerk, it's more of a clerical job in terms of looking at production control and production scheduling.

(*Id.* at 33–34.)

The ALJ found plaintiff to be of an advanced age with a high school education. (*Id.*) She then determined that plaintiff was not disabled because he "has acquired skills that would allow him to perform other work that exists in significant numbers in the national economy." (*Id.* at 20.) The ALJ noted that her decision was based on the vocational expert's testimony, claimant's age, educational background, job experience, and plaintiff's RFC. (*Id.* at 19–20.)

The court agrees with plaintiff that the ALJ's discussion regarding any transferable skills of plaintiff is less than adequate. The ALJ did not ask any further questions of the VE regarding a description of skills required of a manager. The ALJ also failed to inquire further of plaintiff about the skills necessary to perform the work required of his previous position. The court disagrees with the Commissioner's reading of *Dikeman v. Halter*. The court in *Dikeman* found that the ALJ failed to make the requisite findings regarding which specific skills plaintiff had acquired, and remanded the case with instructions for the ALJ to make "specific findings as to the particular skills plaintiff may have acquired and the specific jobs to which those skills are transferable." 245 F.3d 1182, 1188 (10th Cir. 2001) (citations omitted); *see also Ware v. Barnhart*, 123 F. App'x 335, 338 (10th Cir. 2005) (finding that the ALJ's step five determination was not supported by substantial evidence because the VE failed to identify specific skills plaintiff acquired in her previous job, and failed to discuss how the skills were transferable to the jobs in the VE's listing). Without knowing what duties plaintiff performed as a manager at Kmart, and what skills were required to perform his work duties, the court cannot find that substantial evidence supports the ALJ's decision. *Dikeman*, 245 F.3d at 1188. On remand, the ALJ shall further evaluate whether plaintiff has transferable skills, and

which skills are transferable to the jobs plaintiff can perform that were identified by the ALJ.

**IV.      Conclusion**

Based on a thorough review the record and the ALJ's decision, the court reverses the Commissioner's decision and remands the matter based on deficiencies in the ALJ's RFC assessment and step five findings. Consistent with the opinion above, on remand, the ALJ shall properly assess plaintiff's RFC by: (1) linking it with evidence in the record; (2) assessing plaintiff's mental RFC and the PRTF criteria; and (3) discussing plaintiff's exertional and non-exertional limitations. Additionally, the ALJ shall determine plaintiff's transferable skills, and explain which skills are transferable to other jobs in the national economy.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is reversed, judgment is entered, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further findings consistent with the court's findings above.

Dated this 23rd day of September, 2011 at Kansas City, Kansas.

>                          **s/ Carlos Murguia**
>                          **CARLOS MURGUIA**
>                          **United States District Judge**